**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO.   3:21-CV-00252-CRS-CHL**

JAMES H.[1],                                                                            **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**                              **Defendant.**

<u>**REPORT AND RECOMMENDATION**</u>

Before the Court is the Complaint (DN 1) of Plaintiff James H. (the "Claimant"), seeking judicial review of the final decision of the Commissioner of Social Security (the "Commissioner"). *See* 42 U.S.C. § 405(g).  On March 4, 2022, Petitioner filed his fact and law summary, (DN 18), and in response, the Commissioner filed her fact and law summary on April 29, 2022.  (DN 22.) This case was referred to the undersigned Magistrate Judge to prepare a report and recommendation.  (DN 13.)  This matter is ripe for review.

## I.      FINDINGS OF FACT

On April 15, 2019, Claimant filed an application for Disability Insurance Benefits ("DIB") alleging that he was disabled as of July 26, 2018 due to "back/knee pain," "right side weakness," and "depression/anxiety."[2]  (R. at 102, 199, 213.)  Claimant's application was denied initially on August 16, 2019, and on October 8, 2019, his application was denied on reconsideration.  (*Id.* at 102, 119.)  On July 23, 2020, Administrative Law Judge Marci P. Eaton (the "ALJ") held a hearing on Claimant's application.  (*Id.* at 30–58.)  During the hearing, the ALJ heard testimony from

---

[1] Pursuant to General Order 22-05, the Plaintiff in this case is identified and referenced solely by first name and last initial.

[2] The undersigned notes that the record includes a decision by an ALJ dated July 30, 2018 denying a prior DIB application filed by Claimant on October 9, 2015.  (R. at 62–82.)  Claimant does not raise any challenges concerning this prior decision.

Claimant, who was assisted by a representative, and from vocational expert Robert Bond (the "VE"). (*Id.*)  In a decision dated September 2, 2020, the ALJ engaged the five-step evaluation process promulgated by the Commissioner to determine whether an individual is disabled, and, in doing so, made the following findings:

1.   The claimant meets the insured status requirements of the Social Security Act through September 30, 2020.

2.   The claimant has not engaged in substantial gainful activity since July 26, 2018, the alleged onset date (20 CFR 404.1571 *et seq.*).

3.   The claimant has the following severe impairments: degenerative disc disease, obesity, degenerative joint disease, anxiety disorder, post-traumatic stress disorder, and depression (20 CFR 404.1520(c)).

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.   [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally climb ramps or stairs. He should avoid climbing ladders, ropes or scaffolds. He can occasionally stoop, kneel and crouch. He should avoid crawling. He is limited to no more than occasional bilateral overhead reaching. He is limited to no more than occasional exposure to extreme temperatures and vibrations. The claimant is limited to exposure to workplace hazards, including unprotected heights and machinery with moving parts that fail[] to stop when human contact is lost. He requires an occupation with a set routine, established procedures and few changes during the workday. He is limited to no fast-paced production line or quota driven work, and no assembly-line work. The claimant would be off task for no more than 10% of the workday, in addition to normally scheduled breaks and he would miss no more than one day of work per month. He requires a use of a cane for ambulation and balance.

6.   The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.     The claimant was . . . 47 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8.     The claimant has at least a high school education (20 CFR 404.1564).

9.     Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.     Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.     The claimant has not been under a disability, as defined in the Social Security Act, from July 26, 2018, through the date of this decision (20 CFR 404.1520(g)).

(*Id.* at 18–25.)

On February 16, 2021, the Appeals Council denied Claimant's request for review at which point, the ALJ's decision became the final decision of the Commissioner. (*Id.* at 1.) On April 21, 2021, Claimant timely filed this action. (DN 1.)

## II.   CONCLUSIONS OF LAW

### A.  Standard of Review

The Court may review the final decision of the Commissioner, but that review is limited to whether the Commissioner's findings are supported by "substantial evidence" and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). "Substantial evidence" means "more than a mere scintilla"; it means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Court must "affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have

supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir.

2013); *see Smith v. Sec'y of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding

that if the Court determines the ALJ's decision is supported by substantial evidence, the court

"may not even inquire whether the record could support a decision the other way").  However,

"failure to follow agency rules and regulations" constitutes lack of substantial evidence, even

where the Commissioner's findings can otherwise be justified by evidence in the record.  *Cole v.*

*Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B.  Five-Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential

evaluation process that an ALJ must follow in evaluating a disability claim.  20 C.F.R. § 404.1520

(2021).  In summary, the evaluation process proceeds as follows:

1. Is the claimant involved in substantial gainful activity? If the answer is "yes," the claimant is not disabled.  If the answer is "no," proceed to the next step.

2. Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[3] and significantly limits his or her physical or mental ability to do basic work activities?  If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

3. Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1?  If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

4. Does the claimant have the residual functional capacity ("RFC") to return to his or her past relevant work?  If the answer is "yes," then the claimant is not disabled.  If the answer is "no," proceed to the next step.

---

[3] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve (12) months.  20 C.F.R. § 404.1509 (2021).

4

> 5. Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

20 C.F.R. § 404.1520(a)(4).

The claimant bears the burden of proof with respect to Steps 1 through 4. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). However, the burden shifts to the Commissioner at Step 5 to prove that other work is available that the claimant is capable of performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C. Claimant's Contentions

Claimant contends that the ALJ erred at Step 4 in evaluating Claimant's mental RFC[4] and at Step 5 in determining the number of jobs in the national economy that Claimant can perform. (DN 18, at PageID # 562–63.) The undersigned addresses Claimant's contentions below.

### 1. Step 4 – Mental RFC Determination

An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c), (2021). The ALJ bases his or her determination on all relevant evidence in the case record, including statements from medical sources. 20 C.F.R. §§ 404.1529 (2001); 404.1545(a)(1)–(4). Thus, in making his or her determination of a claimant's RFC, an ALJ must necessarily evaluate the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. § 404.1527 (2021); 20 C.F.R. § 404.1529(a).

---

[4] Claimant does not challenge the ALJ's findings with respect to his physical RFC.

At Step 4 the ALJ considered the extent to which Claimant's allegation of disabling symptoms was consistent with the evidence in the record. (R. at 20–23.) In doing so, the ALJ concluded that Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms were not consistent with the record. (*Id.* at 21.) With respect to the alleged symptoms that Claimant attributes to his mental impairments, the ALJ noted that Claimant reported "mood swings, sadness, irritability, and flashbacks." (*Id.*) The ALJ considered relevant medical evidence, noting that Claimant "has been involved in some mental health treatment and was generally characterized as presenting with anxious behavior but euthymic mood, appropriate affect, good insight/judgment, and appropriate thought process." (*Id.* at 21–22.) The ALJ also noted that "[t]here is no evidence of inpatient psychiatric admissions during the period at issue." (*Id.* at 22.) The ALJ cited the report of consultative examiner Greg V. Lynch, Ph.D ("Dr. Lynch"), noting that Dr. Lynch observed that Claimant's "mood 'seemed depressed' and he exhibited variable and appropriate affect" during a July 1, 2019 examination. (*Id.*) The ALJ cited mental health treatment notes prepared by Amy Nunn, APRN ("Nurse Nunn") between February and May 2020, noting that they "indicate the claimant demonstrated appropriate behavior, normal speech, no signs of anxiety, full orientation, and appropriate mood." (*Id.*) Finally, the ALJ cited records from Claimant's orthopedic provider, and stated "as recently as March 2020, the claimant denied any anxiety or depression." (*Id.*)

The ALJ also considered the medical opinion evidence in the record, including the reports of state agency reviewing consultants Clariss Roan-Belle, Ph.D and Mary K. Thompson, Ph.D. (*Id.* at 22–23.) In their respective August 14 and October 7, 2019 mental function evaluations, the reviewing consultants found mild limitations in the following areas: (1) understand, remember, or

apply information; and (2) adapt and manage oneself.  (*Id.* at 93, 110.)  They found moderate limitations in the following areas: (1) interact with others; and (2) concentrate, persist, or maintain pace.  (*Id.*)  In light of these limitations, the reviewing consultants found that Claimant requires several workplace restrictions with respect to routine, productivity, and interpersonal contacts.  (*Id.* at 99, 115.)  The ALJ found their opinions persuasive, explaining:

> Although the State agency consultants did not examine the claimant, they provided specific reasons for their opinions reflecting that they were grounded in the evidence in the case record. The undersigned finds that the evidence received into the record after the reconsideration determination did not provide any new or material information that would significantly alter the State agency consultants' opinions (20 CFR 404.1527(e)).

(*Id.* at  23.)

The ALJ adopted the reviewing consultants' recommended workplace restrictions in her mental RFC determination:

> He requires an occupation with a set routine, established procedures and few changes during the workday. He is limited to no fast-paced production line or quota driven work, and no assembly-line work. The claimant would be off task for no more than 10% of the workday, in addition to normally scheduled breaks and he would miss no more than one day of work per month.

(*Id.* at 20.)

In evaluating the medical opinion evidence, the ALJ also considered the consultative examination report prepared by Dr. Lynch.  In the report, Dr. Lynch opined:

> The claimant's capacity to understand, remember, and carry out instructions towards performance of simple repetitive tasks seems affected by the impairment with slight limitations noted. His ability to tolerate stress and pressure of day-to-day employment seems affected by the impairment with moderate limitations noted.  His capacity to sustain attention and concentration towards performance of simple repetitive tasks does not seem limited by mental health impairment. His capacity to respond appropriately to supervision,

> coworkers, and work pressures in a work setting seems affected by
> the impairment with marked limitations noted.

(*Id.* at 294.)

The ALJ found Dr. Lynch's opinion persuasive only to the extent that it was consistent with the ALJ's RFC determination.  (*Id.* at 23.)  The ALJ rejected Dr. Lynch's opinion in part, explaining, "the claimant's conservative treatment history and clinical findings as discussed above fail to establish any support for marked limitations in any domain of mental functioning."  (*Id.*)

Claimant contends that the RFC determination is defective because, in his view, the ALJ failed to consider all relevant medical evidence in the record and failed to properly evaluate Dr. Lynch's opinion.  (DN 18-1, at PageID # 573–75.)

### i.  Selective Citation of Medical Evidence

Claimant argues that the ALJ "materially misrepresents the evidence" in her discussion of Claimant's mental health treatment.  (*Id.* at 573.)  Claimant notes that the ALJ cited the February to May 2020 mental health treatment notes prepared by Nurse Nunn as "indicat[ing] the claimant demonstrated appropriate behavior, normal speech, no signs of anxiety, full orientation, and appropriate mood."  (*Id.*) (quoting *id.* at 22.)  Claimant points other portions of the notes where Nurse Nunn describes Claimant's condition as "unstable," "uncontrolled," or "worsening" and protests that "[t]he ALJ's discussion of the record omits this material information."  (*Id.* at 575.) Finally, Claimant questions why the ALJ's summary of Claimant's mental health records omits gloomy findings noted by Nurse Nunn, "a specialist in psychiatric care," but discusses the rosier evidence, i.e. Claimant denying anxiety or depression, noted by Claimant's orthopedic provider. (*Id.* at 573–74.)  Although Claimant did not identify a specific error in the ALJ's analysis, based on the substance of Claimant's objection and the authorities he cites in support, the undersigned

construes Claimant as contending that the ALJ failed to consider the record as a whole. (*See id.* at 574.)

As a starting point, "[a]lthough required to develop the record fully and fairly, an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004) ("An ALJ need not discuss every piece of evidence in the record for his decision to stand."). However, the Court examines the record as a whole, including whatever evidence "in the record fairly detracts from its weight," without "resolv[ing] conflicts in evidence or decid[ing] questions of credibility" to determine whether an ALJ's decision is supported by substantial evidence. *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 253 (6th Cir. 2016) (quoting in part *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990) and citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012)). Thus, where an ALJ has "improperly cherry picked evidence" instead of "more neutrally weighing the evidence," his or her decision is unlikely to be supported by substantial evidence. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009); *see Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) ("[S]ubstantiality of evidence evaluation does not permit a selective reading of the record.").

To start, as the Commissioner notes, the ALJ's statement about Nurse Nunn's records is in no way inaccurate. The records show that during each visit, Nurse Nunn performed a clinical review of the following systems: Appearance/Behavior, Speech; Anxiety, Mood/Affect, Thought content, Thought processes, Perceptions, Orientation, and Cognitive functions. (R. at 424, 429, 434, 439, 444, 449, 454, 459, 464, 469, 474, 479.) For every system, findings are overwhelmingly

normal, with exceptions in Anxiety and Mood/Affect for which Claimant was noted as "anxious" and having a "sad mood" in several instances.  (*Id.*)  Consistent with the ALJ's statement, the records also show several visits during which findings for Anxiety are noted as "none" and for Mood/Affect are noted as "appropriate."  (*Id.* at 424, 434, 439, 444, 449, 454.)  Additionally, the ALJ did not ignore conflicting evidence; she began her summary of the medical noting that Claimant has been involved in some "mental health treatment and was generally characterized as presenting with anxious behavior . . . ."  (*Id.* at 21–22.)  Though Nunn's records were not referenced with this statement, the ALJ cited recent records from a different mental healthcare provider.  (*Id.*) (citing *id.* at 304–11.)  Further, there is nothing misleading about the ALJ's mention that Claimant denied anxiety or depression to his orthopedic provider.  Even if orthopedic providers would not ordinarily be expected to assess patients' mental health, in this case, the record reflects that those psychiatric symptoms were reviewed and Claimant denied them.  (R. 353.)  *See Hardy v. Comm'r of Soc. Sec.*, No. 3:20-CV-424-BJB-CHL, 2021 WL 7906885, at *12 (W.D. Ky. July 23, 2021) (ALJ did not err in finding alleged mental impairments inconsistent with claimant's reports to primary care provider when the reports showed that claimant "said something was the case to one audience and said the opposite was the case to another audience").

Finally, it is not clear that the unmentioned portions of Nurse Nunn's records constitute contrary evidence because Claimant has not explained how instances of uncontrolled, unstable, or worsening anxiety or depression undermine the ALJ's conclusion that "claimant may experience some occasional mental health symptoms, [and] his conservative treatment history and generally mild clinical findings suggests he is capable of performing work within the above residual functional capacity."  (R. at 22.)  The undersigned has independently reviewed the record and finds that it does not fairly detract from the ALJ's decision and therefore cannot conclude that the ALJ

failed to meet her duty to consider the record as a whole.  Accordingly, the undersigned will not recommend remand on such grounds.

## ii.  Evaluation of Dr. Lynch's Opinion

The new regulations for evaluating opinion evidence are applicable to Claimant's case because he filed his application after March 27, 2017.  *See* 20 C.F.R. § 404.1520c (2021) ("For claims filed on or after March 27, 2017, the rules in this section apply.").   Under the new regulations an ALJ will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)" in the record regardless of its source.[5]   20 C.F.R. § 404.1520c(a).   Instead, an ALJ will evaluate the "persuasiveness" of a medical opinion by reference to the five factors listed in the regulation: supportability, consistency, relationship with the claimant, specialization, and other factors.  20 C.F.R. § 404.1520c(a), (c).  The regulation provides that the two most important factors are supportability and consistency and that an ALJ is required to "explain how [he or she] considered the supportability and consistency factors for a medical source's medical opinions . . . ."  20 C.F.R. § 404.1620c(a), (b)(2).  However, the regulation states that "it is not administratively feasible for [an ALJ] to articulate in each determination or decision how [he or she] considered all of the factors for all of the medical opinions . . . in [the] case record"; thus, an ALJ is not required to explicitly discuss how he or she weighed the factors of relationship with the claimant,[6] specialization, and other factors in every case.[7] 20 C.F.R. § 404.1520c(b)(1)–(2).

---

[5] This language indicates that the new regulation has done away with the controlling weight and other old rules regarding the weight to be ascribed to medical opinions.  20 C.F.R. § 404.1527(c)(2).

[6] In assessing this factor, the regulation requires an ALJ to consider the length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship.  20 C.F.R. § 404.1520c(c)(3)(i)-(v).

[7] The regulations provide that an ALJ will consider any "other factors that tend to support or contradict a medical opinion."  20 C.F.R. § 404.1520c(c)(5).  These factors include, but are not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim," "whether new evidence [ ] receive[d] after the medical

Here, Claimant argues that the ALJ "fail[ed] to offer a meaningful issue of consistency under 20 C.F.R. § 404.1520c to support the ultimate evaluation of Dr. Lynch's opinion." (DN 18-1, at PageID # 575.)  In her decision, the ALJ's explained her evaluation of Dr. Lynch's opinion as follows: "This assessment is partially persuasive to the extent it is consistent with the above residual functional capacity. However, the claimant's conservative treatment history and clinical findings as discussed above fail to establish any support for marked limitations in any domain of mental functioning." (R. at 23.)  Claimant contends that the ALJ's explanation is insufficient and offers three reasons why. (DN 18-1, at PageID # 575.)

*First*, Claimant asserts that "the clinical findings discussed [] were mischaracterized." (DN 18-1, at PageID # 575.)  As was discussed above, the ALJ's discussion of the clinical findings related to Claimant's mental symptoms is supported by the record, and those findings— "appropriate behavior, normal speech, no signs of anxiety, full orientation, and appropriate mood"—tend to undermine the marked limitations in workplace interactions that Dr. Lynch described. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.00(F)(2)(e) (2001) (defining a "marked limitation" as one for which "functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited").

*Second*, Claimant asserts: "[T]he ALJ does not clarify what she means by conservative treatment history. A claimant need not be committed inpatient to be found disabled." (DN 18-1, at PageID # 575.)  To the first point, it is clear from the ALJ's statement what she meant by conservative treatment history because she specified that she was referring to the treatment history "discussed above." (R. at 23.)  This points the reader to the ALJ's separate discussion of Claimant's mental health treatment where the ALJ describes Claimant's involvement in some

---

source made his or her medical opinion . . . makes the medical opinion . . . more or less persuasive," and whether the medical source has "an understanding of [the] disability program's policies and evidentiary requirements." *Id.*

treatment without any in-patient psychiatric admissions and makes no mention of other, more aggressive psychiatric interventions.  (*See id.* at 21–22.)  Thus, the ALJ's statement leaves a clear path of reasoning, which is sufficient to meet the articulation requirement under the new regulations. *See Carrino v. Comm'r of Soc. Sec.*, No. CV 20-380-HRW, 2021 WL 2895181, at *3 (E.D. Ky. July 9, 2021) ("The ALJ specifically noted that the pertinent mental health treatment Plaintiff received had been conservative. Moreover, while discussing the treatment notes in the record, the ALJ emphasized that although Plaintiff consistently claimed anxiety and depression, he was stable, and his symptoms managed effectively with medication.").  Additionally, to the extent that Claimant contends that the ALJ cannot rely on the intensity of Claimant's treatment in judging the consistency of Dr. Lynch's opinion, he is incorrect.  The Sixth Circuit has "often concluded that ALJs properly discounted the opinions of [] physicians where the opinions were incompatible with the claimant's generally conservative course of treatment or activities of daily living." *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 417 (6th Cir. 2020) (collecting cases). An ALJ may properly rely on the intensity of past treatment as inconsistent evidence of an alleged mental impairment so long as it is not "determinative factor in a credibility assessment[.]" *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004) (quoting *Blankenship v. Bowen,* 874 F.2d 1116, 1124 (6th Cir.1989)).  Here, the ALJ relied on both conservative treatment history and clinical findings in judging the consistency of Dr. Lynch's opinion.  (R. at 23.)  Finally, while it is true that psychiatric hospitalization is not a prerequisite for marked limitations in mental functioning, Claimant "cites no evidence that indicates that [his providers] w[ere] unable or unwilling to provide him with more aggressive treatment options for [mental health] symptoms." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 120 (6th Cir. 2016).

*Third*, Claimant asserts: "the ALJ conceded that activities were limited, but attempted to write this off as difficult to attribute to his medical conditions." (DN 18-1, at PageID # 575.) It is unclear how Claimant believes that this assertion invalidates the ALJ's articulation of the consistency factor in her evaluation of Dr. Lynch's opinion. Separate from her discussion of the opinion evidence, the ALJ considered the evidence of Claimant's activities of daily living ("ADL"), as is proper in making an RFC determination. *See* 20 C.F.R. § 404.1529(c)(3)(i). However, there is no indication that the ALJ relied on Claimant's ADL in discounting the consistency of the Dr. Lynch's opinion, and the ALJ was not required to discuss whether Dr. Lynch's opinion was consistent with Claimant's ADL.

The undersigned recognizes that the ALJ's two-sentence analysis is not a model example of a persuasiveness evaluation under 20 C.F.R. § 404.1520c. In other cases, a meatier explanation may be required, but in no case will the regulations demand perfection. Here, in identifying the specific findings in Dr. Lynch's opinion that she found unpersuasive and pointing to other specific evidence in the record that she found inconsistent with those findings such that the reviewing court can engage in meaningful review of her analysis, the ALJ satisfied the minimum articulation level established by the new regulations.

## 2.   Step 5 – Inconsistencies Between VE Testimony and DOT

Claimant argues that the ALJ's Step 5 determination is not supported by substantial evidence. (DN 18-1, at PageID # 571–73.) At step five, the ALJ has the burden of demonstrating that there exists a significant number of jobs in the national economy that the claimant can perform given his or her RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(a)(4)(v), (g); 20 C.F.R. § 404.1560(c) (2020); *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The Commissioner may meet this burden by relying on expert vocational testimony

received during the hearing to determine what jobs exist in significant numbers in the economy

that the claimant can perform considering the combination of his or her limitations.  *See, e.g., Fry*

*v. Comm'r of Soc. Sec.*, 476 F. App'x 73, 76 (6th Cir. 2012); *Wilson v. Comm'r of Soc. Sec.*, 378

F.3d 541, 548 (6th Cir. 2004).  Where the ALJ relies on the testimony of a VE, SSR 00-4p imposes

on the ALJ an affirmative duty to ask the VE whether there is a conflict between the VE's

testimony and information in the Dictionary of Occupational Titles ("DOT").  SSR 00-4p, 65 Fed.

Reg. 75,759, 75,760 (Dec. 4, 2000).  If there appears to be a conflict, ALJ must elicit from the VE

an explanation for the conflict.  *Id.*  The following is a helpful summary of the authorities relevant

to Claimant's challenge by the Eastern District of Texas.

> The *DOT* and its supplement, Selected Characteristics of Occupations Defined in the *Revised Dictionary of Occupational Titles (SCO )*, comprise a comprehensive listing of job titles in the United States, along with detailed descriptions of requirements for each job, including assessments of exertional levels and reasoning abilities necessary for satisfactory performance of those jobs. The Commissioner recognizes the DOT/SCO publications as authoritative, and routinely relies on them "for information about the requirements of work in the national economy." Soc. Sec. R. 00–4p, 2000 WL 1898704, at *2.
> . . .
> The *SCO* refers to but does not incorporate by reference another Department of Labor publication, the *1991 Revised Handbook for Analyzing Jobs (RHAJ )* which identifies various factors important to adjustments workers must make for successful job performance.

*Veal v. Soc. Sec. Admin.*, 618 F. Supp. 2d 600, 608–10 (E.D. Tex. 2009) (footnotes omitted).

Here, during the hearing, the ALJ posed a hypothetical claimant to the VE with an identical

RFC to Claimant's, and the VE testified that the hypothetical claimant could perform several

sedentary, unskilled jobs, including document preparer (DOT # 249.587-018), hand mounter (DOT

# 976.684-018), and semiconductor bonder (DOT # 726.685-066).  (R. at 54.)  The VE testified

that there were 18,000 document preparer positions, 10,000 hand mounter positions, and 13,000

semiconductor bonder positions available in the national economy.  (*Id.*)  Based on the VE's testimony, the ALJ found that there were a significant number of jobs in the national economy that Claimant could perform, and therefore, Claimant was not disabled.  (*Id.* at 24–25.)

Claimant argues that the ALJ erred in relying on the VE's testimony because, in his view, the testimony conflicts with the DOT.  (DN 18-1, at PageID # 571–73.)  Specifically, Claimant notes that all three jobs the VE identified list the temperament "Attaining precise set limits, TOLERANCES, and standards" according to their DOT description.  (*Id.* at 571) (quoting DOT's description under the job titles).   Claimant argues that this temperament conflicts with the VE's testimony that a hypothetical claimant could perform this job with an RFC "limited to no fast-paced production line or quota driven work, and no assembly-line work."  (*Id.* at 573) (quoting R. at 20.)   While the DOT does not define "Attaining precise set limits, TOLERANCES, and standards," Claimant notes:

> The [RHAJ] describes attaining precise set limits, tolerances, and standards as "[involving] adhering to and achieving exact levels of performance, using precision measuring instruments, tools, and machines to attain precise dimensions; preparing exact verbal and numerical records; and complying with precise instruments and specifications for materials, methods, procedures, and techniques to attain specified standards."

(DN 18-1, at PageID # 571) (quoting *Ryan Patrick A. v. Berryhill*, No. EDCV 17-2526-JPR, 2019 WL 1383800, at *6 (C.D. Cal. Mar. 27, 2019)).  In addition to *Ryan Patrick A.*, Claimant cites two other nonbinding district court cases as having "affirmed that attaining precise set limits, tolerances, and standards materially conflicts with an RFC's restriction against fast-paced or production-quota work."  (*Id.*) (citing *Sara A. v. Saul*, No. 3:19-CV-144, 2019 WL 6606861, at *24 (N.D. Ind. Dec. 5, 2019) and *Sandra H. v. Comm'r of Soc. Sec.*, No. 2:17-CV-403-FVS, 2019 WL 289811, at *7 (E.D. Wash. Jan. 22, 2019)).

In response, the Commissioner argues that there is no conflict between Claimant's quota and pace restrictions and the DOT descriptions for the job titles identified by the VE.  (DN 22, at PageID # 599–600.)  The Commissioner notes that the DOT does not define "Attaining precise set limits, TOLERANCES, and standards" and cites a nonbinding district court case in which the court found that this temperament does not preclude pace or quota restrictions.  (*Id.*) (citing *Stephanie Beth D. v. Kijakazi*, No. CV 20-2622-JWL, 2022 WL 1136192, at \*8 (D. Kan. Apr. 18, 2022).  In *Stephanie Beth D.*, the court reasoned, "The DOT does not label this as a 'temperament' and does not explain the meaning of the phrase or suggest that it relates in any way to fast-paced production requirements."  2022 WL 1136192, at \*8 (citing DOT).  The claimant had urged the court to follow *Ryan Patrick A.* and *Sandra H.*, which it found "neither binding on or persuasive to this court." *Id.*  The Commissioner points to this quotation, emphasizing that "the [c]ourt declined to use the rationale from the Eastern District of Washington and Central District of California in its determination."  (*Id.* at 600.)  The Commissioner then asserts: "This Court should follow[] the holding set forth in [*Stephanie Beth D.*]."  (*Id.*)  The Commissioner's logic on this latter point is circuitous; she proposes the Court follow a nonbinding case in rejecting *Ryan Patrick A.* and *Sandra H.* as nonbinding.  In the undersigned's view, the District of Kansas is no more, nor any less, authoritative than the Eastern District of Washington or Central District of California.  Nonetheless, the undersigned is not convinced that Claimant can show a conflict between the temperament described in the DOT job titles and his pace and quota restrictions without relying on the RHAJ definition of temperament that he offers.  As one court within this circuit explained:

> The Commissioner has not taken administrative notice of the *Revised Handbook. See* 20 C.F.R. § 404.1566(d). As one court concluded, "in absence of proof that the *Commissioner* takes administrative notice of the [*Revised Handbook* ] information, or otherwise embraces it as authoritative, the court cannot connect the dots in such a way as to conclude that a [*Revised Handbook* ]-

> conflict runs afoul of either circuit law of Soc. Sec. R. 00–4p...."
> *Gaspard v. Comm'r Soc. Sec.,* 609 F.Supp.2d 607, 614–17
> (E.D.Tex.2009) (adopting report and recommendation). Therefore,
> [SSR 00-4p] does not apply to conflicts between VE testimony and
> the *Revised Handbook.*

*Tait v. Comm'r of Soc. Sec.*, No. 13-CV-12667, 2014 WL 4187942, at *24 (E.D. Mich. Aug. 22, 2014).

Consistent with that reasoning, the undersigned rejects the RHAJ interpretation that Claimant offers and finds that the VE's testimony was not inconsistent with Claimant's mental RFC as "neither the DOT entries for [document preparer, hand mounter] nor [semiconductor operator] specifically reference a fast pace or production work."  *Harris v. Comm'r of Soc. Sec.*, No. 320CV00216CRSCHL, 2021 WL 7542651, at *11 (W.D. Ky. Aug. 18, 2021), *report and recommendation adopted sub nom. Harris v. Kijakazi*, No. 3:20-CV-216-CRS, 2022 WL 822162 (W.D. Ky. Mar. 18, 2022).  Therefore, the ALJ's reliance on the VE's testimony is not a basis for remand.

Additionally, to the extent that Claimant contends that the ALJ failed to comply with the requirements SSR 00-4p, the undersigned finds no basis for remand.[8]  During the hearing, the ALJ neglected to "[a]sk the VE . . . if the evidence he . . . provided conflicts with information provided in the DOT."  SSR 00-4p at *4.  To the extent that this constitutes an error, it was harmless because the VE nonetheless testified that his testimony is consistent with the DOT.  After the ALJ

---

[8] As the Commissioner points out, Claimant does not directly challenge the ALJ's compliance with the inquiry requirement of SSR 00-4p. Thus, while the undersigned addresses the issue to the extent that it is intertwined Claimant's challenge to the ALJ's reliance on the VE's testimony, the Court may alternatively deem the issue waived. *United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997)) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived."); *see also Brindley v. McCullen*, 61 F.3d 507, 509 (6th Cir. 1995) (observing that "[w]e consider issues not fully developed and argued to be waived."); *Rice v. Comm'r of Soc. Sec.*, 2006 WL 463859, at *2 (6th Cir. 2006) (unpublished opinion).

completed her questioning, she provided Claimant's representative an opportunity to question the

VE.  (R. at 55.)  Claimant's representative elicited the following testimony:

> Q: . . . Concerning the job numbers that you had cited, what was the source of those?
>
> A: Utilize standard process for the numbers. First, we identified the DOT code and there are cross walk to the O*Net and from there we can get the Standard Occupational Classification codes. Once we have those codes, I can look at the Occupational Employment Statistics from the U.S. Department of Labor. Once I have that OED code information, then I look at the total number of DOT titles that are included in that particular coding and from there do a weighting based upon research information on how those jobs actually exist in the economy and from there, I'm able to do an estimate number of jobs for each DOT title.
>
> Q: Okay. And responding to the Judge's hypothetical questions, is it correct that you did not consider any other factors or limitations beyond those identified?
>
> A: That's correct.

(R. at 57.)

The ALJ did not provide any further testimony following this exchange, and the hearing

ended shortly thereafter.  (*Id.* at 57–58.)  The undersigned finds that this exchange is a sufficient

affirmation by the VE that he testified consistent with the DOT without relying on any separate

occupational expertise.  *See Cooper v. Comm'r of Soc. Sec.*, No. 20-11855, 2021 WL 3928943, at

*4 (E.D. Mich. Sept. 2, 2021) (ALJ's duty to inquire was discharged by asking VE, "your

testimony today, has it been covered by the DOT?" who responded, "For the most part," and noted

specific instances in which she relied on her experience); *Issac v. Comm'r of Soc. Sec.*, No. 1:16

CV 1345, 2017 WL 3705902, at *8 (N.D. Ohio Aug. 28, 2017) (when the ALJ elicits sufficient

testimony concerning any conflict, "it does not matter that the inquiry happened *before* rather than

*after* the VE's substantive testimony") (citation omitted) (emphasis in original).  Claimant's

representative had the opportunity to further cross-examine the VE and bring out any conflicts

with the DOT.  The fact that [he] did not do so is not grounds for relief." *Beinlich v. Comm'r of Soc. Sec.*, 345 F. App' 163, 168–69 (6th Cir. 2009) (citations omitted); *see also Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009).  "Neither the DOT nor the VE['s] . . . evidence automatically 'trumps' when there is a conflict" between the two; instead, the ALJ "must resolve the conflict by determining if the explanation given by the VE . . . is reasonable and provides a basis for relying on the VE['s] . . . testimony rather than on the DOT information."  SSR 00-4p, 65 Fed. Reg. at 75,760.  Without an objection on this basis, the ALJ had no reason to inquire further into the VE's testimony.  Thus, because the VE sufficiently testified that his testimony was consistent with the DOT and the uncontradicted testimony indicated that no conflict existed, it was not error for the ALJ to rely on his testimony and any failure to comply with SSR 00-4p was harmless.  For the foregoing reasons, the undersigned finds that the ALJ's Step 5 determination was supported by substantial evidence.

### III.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that the ALJ's decision

be **AFFIRMED**.

Colin H Lindsay, Magistrate Judge
United States District Court

August 15, 2022

cc:  Counsel of record


### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations.   A copy shall forthwith be electronically transmitted or mailed to all parties.   28 U.S.C. § 636(b)(1)(C).   Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations.   Fed. R. Civ. P. 72(b)(2).   Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal.   *Id.; United States v. Walters,* 638 F.2d 947, 949–50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).